1

2

3

4          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
5                   AT TACOMA

6    KARLENE K PETITT,

7                            Plaintiff,           Case No. 2:21-cv-1365-RSL-TLF

8          v.                                     REPORT AND
                                                  RECOMMENDATION
     CHRISTOPHER B PUCKETT,
9                                                 Noted for April 29, 2022
                             Defendant.
10

11          This matter comes before the Court on defendant's motion to dismiss. Dkt. 13.

12   The parties have briefed the issues presented in the motion and the Court has held oral

13   argument regarding the pending motion. Dkt. 15, Plaintiff's Response; Dkt. 16,

14   Declaration of Karlene Petitt with attached Exhibits, Dkt. 17, Defendant's Reply; Dkt. 18-

15   19, Notice of Hearing. Based on the reasons set forth herein, the Court should grant

16   defendant's motion to dismiss (Dkt. 13) and dismiss plaintiff's complaint without

17   prejudice because the Court lacks personal jurisdiction over defendant. Because the

18   Court lacks personal jurisdiction, the Court need not consider the remaining grounds for

19   dismissal raised by defendant.

20                           FACTUAL BACKGROUND

21          Plaintiff alleges that she is an airline pilot employed by Delta Air Lines, Inc.

22   ("Delta"), residing in the state of Washington. Dkt. 1 at ¶ 1. Plaintiff states that defendant

23   is a labor relations attorney employed by Delta. *Id.* at ¶ 2. The complaint states that on

24

25

REPORT AND RECOMMENDATION - 1

January 28, 2015, plaintiff met with officials at Delta to raise issues regarding Delta's alleged non-compliance with federal aviation standards. Dkt. 1 at ¶ 8.

Plaintiff contends that in November 2015, Jim Graham – the Vice President of Flying Operations and Chief Pilot for Delta – sent emails indicating an intention to impose a medical evaluation on plaintiff under the Collective Bargaining Agreement between Delta and the Air Lines Pilots Associations (Collective Bargaining Agreement). *Id.* at ¶ 12. Plaintiff alleges that on March 8, 2016, Delta assigned Kelly Nabors, Manager of Equal Opportunity and Pass Protection, to interview plaintiff regarding plaintiff's safety report and allegations of retaliatory harassment. *Id.* at ¶ 9. Plaintiff states that based on this three-hour interview with Ms. Nabors, Delta ordered plaintiff to submit to a medical evaluation pursuant to the Collective Bargaining Agreement. *Id.*

Plaintiff contends that Delta's Regional Director, Phil Davis, removed plaintiff from flight-duty under the Collective Bargaining Agreement, and pursuant to a letter prepared by defendant. Dkt. 1 at ¶ 13. Next, plaintiff alleges that, contrary to the proper procedure set forth in the Collective Bargaining Agreement, on March 11 and 16, defendant contacted Dr. Altman to discuss plaintiff's psychiatric evaluation. *Id.* at ¶ 11, 13, 14.

Plaintiff also states that the Delta Director of Health Services failed to review plaintiff's medical records or investigate the relevant records before authorizing the psychiatric evaluation. *Id.* at ¶ 15. The complaint maintains that on April 28, 2017, Delta's Director of Health Services designated Dr. Altman as the Company Medical Examiner for plaintiff's evaluation. *Id.* at ¶ 17. Plaintiff alleges defendant has admitted that the payment to Dr. Altman for the March 16, 2017 meeting between Dr. Altman and

REPORT AND RECOMMENDATION - 2

1    defendant – which occurred before Dr. Altman was selected as the Company Medical

2    Examiner – was combined with the fees paid to Dr. Altman for serving as the Company

3    Medical Examiner. *Id.*

4        Plaintiff states that she took a neuropsychological test on May 18, 2016 and Dr.

5    Altman scheduled an evaluation for July 7, 2016. Dkt. 1 at ¶ 21. The complaint alleges

6    that, with defendant's assistance, Dr. Altman conducted a prolonged evaluation process

7    including a six-hour interrogation on July 7, 2016, a five-hour evaluation on July 15,

8    2016, and a one-hour evaluation on September 13, 2016. Dkt. 1 at ¶ 24. Dr. Altman

9    reportedly determined plaintiff suffered from bipolar disorder and recommended plaintiff

10   be permanently removed from flight. *Id.* at ¶ 19.

11       Plaintiff asserts she retained the Mayo Clinic as her Pilot Medical Examiner to

12   review Dr. Altman's report. *Id.* at ¶ 26. Plaintiff states that the doctors at the Mayo Clinic

13   determined that she did not suffer from bipolar disorder or any other mental health issue

14   that would have rendered her unfit for flight duty. *Id.*

15       Next, the complaint states that pursuant to the Collective Bargaining Agreement,

16   Dr. Altman and the Mayo Clinic jointly selected Dr. Andrew Huff as a Neutral Medical

17   Examiner to resolve plaintiff's disputed diagnosis. Dkt. 1 at ¶ 31. Plaintiff states that on

18   August 5, 2017, Dr. Huff examined plaintiff and determined that plaintiff was fit for duty.

19   *Id.* at ¶ 32. The complaint next states that on August 22, 2017, FAA Flight Surgeons

20   unanimously determined that Dr. Altman's report lacked merit and ruled in favor of

21   plaintiff retaining her First-Class Medical certificate. *Id.* at ¶¶ 33-35. Plaintiff reports that

22   she filed an AIR 21 complaint against Delta with the Occupational Safety and Health

23   Administration ("OSHA") on June 6, 2016. *Id.* at ¶ 35. The complaint states that OSHA

24

25

1    held hearings on the complaint in March, April and May of 2019. *Id.* Plaintiff alleges that

2    Judge Scott Morris issued a decision affirming that Delta violated the AIR 21 Statute. *Id.*

3    at ¶ 36 (citing Judge Morris' decision in Petitt v. Delta Air Lines, 2018-AIR-00041).

4                                         <u>DISCUSSION</u>

5          Regarding defendant's motion under Fed. R. Civ. P. 12(b)(2), the plaintiff bears

6    the burden of demonstrating the Court's exercise of jurisdiction is appropriate.

7    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To meet

8    this burden, the plaintiff is not allowed to rely on the bare allegations of the complaint;

9    but uncontroverted allegations in the complaint are taken as true. *Id.* Plaintiff must

10   submit evidence sufficient to make a prima facie showing of personal jurisdiction. *Id.*

11   Therefore, the Court may consider plaintiff's evidence when deciding defendant's

12   motion to dismiss for lack of personal jurisdiction.

13         A. <u>Motion to Strike</u>

14         In support of plaintiff's opposition, plaintiff filed her declaration with attached

15   exhibits. Dkt. 16, Declaration of Karlene Petitt. Plaintiff's declaration attaches the

16   Decision and Order Granting Relief issued by ALJ Scott R. Morris in the case 2018-AIR-

17   00041 before the United States Department of Labor. Dkt. 16, Decision and Order

18   Granting Relief, 7-122. Plaintiff's Declaration also attaches the related trial and

19   deposition testimony[1], Dr. Altman's report[2]; emails related to the facts underlying Petitt

20

21

22

23   _____
     [1] Dkt. 16, Exhibits B – H, at 124-2095.

24   [2] Dkt. 16, Exhibit I, at 2097-2462.

25

REPORT AND RECOMMENDATION - 4

1   v. Delta, 2018-AIR-00041[3]; and plaintiff's request for investigation of the ALPA's

2   conduct[4].

3       Defendant's reply requests that the Court strike plaintiff's declaration and exhibits

4   -- as improper for consideration on a motion to dismiss. The Court should DENY

5   defendant's motion to strike.

6       As further discussed in this Report and Recommendation, the Court lacks

7   personal jurisdiction over defendant in this action and plaintiff's complaint should be

8   dismissed without prejudice on this ground. Because this action should be dismissed for

9   lack of personal jurisdiction, the Court does not need to consider whether plaintiff's

10   exhibits are appropriately before the Court for purposes of defendant's motion to

11   dismiss under Fed. R. Civ. P. 12(b)(6).

12       B.  Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

13       "[P]laintiff bears the burden of demonstrating that personal jurisdiction is proper.

14   *Global Commodities Trading Grp. Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d

15   1101, 1106 (9th Cir. 2020). Whether the Court will decide personal jurisdiction on

16   written materials or after holding an evidentiary hearing is within the discretion of the

17   Court. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285

18   (9th Cir. 1977) ("Because there is no statutory method for resolving [personal

19   jurisdiction], the mode of its determination is left to the trial court.").

20       Defendant challenges the issue of the Court's personal jurisdiction on

21   defendant's initial motion responding to plaintiff's complaint. Dkt. 13. Defendant has not

22

23   [3] Dkt. 16, Exhibits J-L, at 2464-2488.

24   [4] Dkt. 16, Exhibit M, at 2490-2494.

25

REPORT AND RECOMMENDATION - 5

filed an answer to plaintiff's complaint, and the Court has not set a pretrial schedule; discovery has not begun in this action. Accordingly, at this early stage of litigation, the Court should decide the issue of personal jurisdiction on the written materials presented by the parties.

When a Court is deciding a motion challenging personal jurisdiction on written materials, rather than an evidentiary hearing, plaintiff is only required to make a prima facia showing of jurisdiction. *Global Commodities Trading Grp.* 972 F.3d at 1106. While plaintiff cannot simply rely on bare allegations in the complaint, the Court must take as true all uncontroverted allegations in the complaint and affidavits, and resolve all genuine factual disputes in the plaintiff's favor. *Global Commodities Trading Grp.* 972 F.3d at 1106; *Schwazenegger*, 374 F.3d at 799.

To determine whether a federal court has personal jurisdiction over a person, the Court must rely on state law. *Global Commodities Trading Grp*, at 1106. Washington State's long-arm statute, RCW 4.28.185 governs the question of personal jurisdiction. The Ninth Circuit Court of Appeals has explained that this statute is coextensive with the outer limits of federal due process. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994). Thus, the Court need only determine whether jurisdiction in this District comports with due process.

"A district court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has at least 'minimum contact' with the forum and subjecting the defendant to an action in that forum would "not offend traditional notions of fair play and substantial justice."" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contact can give rise to either general or specific jurisdiction. *Id.* General

jurisdiction arises where a cause of action is unrelated to a defendant's contact with the

forum state, but the defendant has such pervasive, continued, and systematic contacts

with the forum state that render a defendant essentially at home in the forum state.

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8-9 (1984); *Global*

*Commodities Trading Grp., Inc.*, 972 F.3d at 1106.

        Specific jurisdiction is properly exercised when a defendant has "purposefully

[availed] itself of the privilege of conducting activities within the forum State, thus

invoking the benefit and protections of its laws." *Hanson v. Danckla*, 357 U.S. 235, 253

(1958). This requirement ensures that a defendant will not be "haled into a jurisdiction

through random, fortuitous, or attenuated contacts." *Zeigler v. Indian River City*, 64 F.3d

470, 473 (9th Cir. 1995) (internal quotations and citations omitted). The Ninth Circuit

uses a three-prong test to determine whether the exercise of specific jurisdiction is

appropriate:

1. The non-resident defendant must purposefully direct his activities or
   consummate some transaction with the forum or resident thereof; or perform
   some act by which he purposefully avails himself of the privilege of
   conducting activities in the forum, thereby invoking the benefits and
   protections of its laws;

2. The claim must arise out of or relate to the defendant's forum-related
   activities; and

3. The exercise of jurisdiction must be reasonable.

1    *Global Commodities Trading Grp., Inc.*, 972 F.3d at 1107. If plaintiff successfully

2    satisfies the first two prongs of the test, the burden shifts to the defendant to present "a

3    compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

4        The first prong of this test includes two distinct concepts – purposeful availment

5    and purposeful direction. *Id.* Purposeful availment generally applies for claims

6    surrounding a contract while purposeful direction usually applies for claims alleging

7    intentional tort. *Id.* Under both approaches, the questions is "whether defendants have

8    voluntarily derived some benefit from their interstate activities such that they will not be

9    haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts."

10   *Global Commodities Trading Grp., Inc.*, 972 F.3d at 1107 (quoting *Burger King*, 471

11   U.S. at 474-75) (internal quotations omitted). The Court must evaluate the parties' entire

12   course of dealing, not solely the tortious conduct alleged. *Global Commodities Trading*

13   *Grp., Inc.*, 972 F.3d at 1108.

14        A defendant purposefully directs their activities towards a forum when they: "(1)

15   committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

16   that the defendant knows is likely to be suffered in the forum state." *Ayla, LLC v. Alya*

17   *Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (quoting *Axiom Foods, Inc. v. Acerchem*

18   *Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). A defendant's awareness that the

19   plaintiff resides in or has strong ties to the forum is insufficient to establish specific

20   jurisdiction. *Ayla, LLC*, 11 F.4th at 980. A defendant's connection or relationship with an

21   out-of-state plaintiff does not, by itself, establish specific personal jurisdiction in

22   plaintiff's home forum. *Walden v. Fiore*, 571 U.S. 277, 285-86 (2014) ("But the plaintiff

23   cannot be the only link between the defendant and the forum. Rather, it is the

24

25

REPORT AND RECOMMENDATION - 8

1    defendant's conduct that must form the necessary connection with the forum State that

2    is the basis for its jurisdiction over him.").

3        The United States Supreme Court has rejected the Ninth Circuit's "individualized

4    targeting" test because the prior approach impermissibly allowed a plaintiff's contact

5    with the defendant and plaintiff's home forum to determine the Court's jurisdictional

6    analysis. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-1070 (9th Cir.

7    2017) (analyzing *Walden*, 571 U.S. 277). Instead, the Court's analysis must focus on

8    the defendant's contacts with the forum, not defendant's knowledge of plaintiff's

9    connection to the forum. *Id.*

10       A defendant's entry into a forum either by the defendant directly or through an

11   agent is relevant contact. *Walden*, 571 U.S. at 285. Yet, "physical entry that is merely

12   incidental to an out-of-state transaction" is insufficient to establish minimum contacts.

13   *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017). Physical presence in the

14   forum is not a requirement for jurisdiction. *Walden*, 571 U.S. at 285.

15       Plaintiff alleges that she resides in Washington and defendant is employed by

16   Delta which does business in Washington. Dkt. 1 at ¶¶ 1-2. Plaintiff's complaint does not

17   identify where defendant's alleged conduct occurred or whether any of defendant's acts

18   were directed at Washington. Dkt. 1. Plaintiff's evidence indicates that defendant is a

19   resident of Georgia. Dkt. 16, Deposition of Christopher Puckett (Exhibit B), at 140

20   (testifying that defendant is a licensed attorney in Georgia); Dkt. 16, Trial Testimony of

21   Christopher Puckett, at 493 (testifying that defendant's place of employment is

22   Georgia).

23

24

25

1   Plaintiff argues that her interview with Kelly Nabors occurred in a hotel lobby near

2   the airport in Seattle, Washington. Dkt. 15 at 4. Plaintiff also contends that defendant is

3   responsible for negotiating pilot contracts and overseeing pilots for Delta Airlines, which

4   would include pilots working out of Seattle, Washington. Dkt. 15 at 6 n. 3.

5   Plaintiff concedes that the Court does not have general personal jurisdiction over

6   defendant in this action. Dkt. 15 at 10. Plaintiff argues that defendant's intentional

7   conduct was expressly aimed at Washington because defendant knew that plaintiff lived

8   in Washington, was based in Washington and would be prohibited from flying in

9   Washington. Dkt. 15 at 11. The United States Supreme Court has rejected this

10  "individualized targeting" argument, explaining that a defendant's awareness that a

11  plaintiff resided in a forum state and would be harmed in that forum state is insufficient

12  to establish minimum contacts. *Walden v. Fiore*, 571 U.S. 277 (2014); *Axiom Foods,*

13  *Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-1070 (9th Cir. 2017). Defendant's

14  knowledge that plaintiff resided in Washington is insufficient to establish personal

15  jurisdiction in Washington because defendant's conduct was directed at plaintiff not at

16  Washington.

17  Next, plaintiff contends that defendant oversees contracts for 14,000 pilots

18  including some in Seattle, Washington. Defendant testified that in his position as labor

19  relations attorney for Delta, he oversaw the negotiation process for the Pilot Working

20  Agreement with 14,000 unionized pilots. Dkt. 16, Deposition of Christopher Puckett, at

21  141. Defendant also testified that he oversaw the grievance and arbitration process for

22  these pilots. Dkt. 16, Christopher Puckett's Trial Testimony, at 496. It is not clear

23  whether any of these pilots reside in Washington. Yet, even if some of the pilots reside

24

25

1  in Washington – as plaintiff contends – this contact would still be insufficient to establish

2  personal jurisdiction over defendant in Washington.

3        The defendant's interactions with pilots in his role as a labor relations attorney is

4  directed at the pilots themselves and at the union – such contact is not directed at the

5  states where the pilots reside. Additionally, any contacts with Washington State in this

6  role would be incidental to defendant's job function in a different state. Contact that is

7  incidental to an out-of-state transaction is insufficient to establish minimum contacts.

8  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1147 (9th Cir. 2017).

9        Finally, plaintiff's argument that defendant directed Kelly Nabors to interview

10  plaintiff in Seattle, Washington is also insufficient to establish personal jurisdiction.

11  Although a plaintiff can establish a court's personal jurisdiction over a defendant based

12  on the conduct of a defendant's agent, physical entry to a state that is merely incidental

13  to an out-of-state transaction cannot establish minimum contacts. *See, Morrill*, 873 F.3d

14  at 1147 (finding that entering Arizona to effectuate service did not reflect an action

15  directed towards Arizona because the conduct was incidental to an out-of-state litigation

16  in Nevada).

17        The record indicates that plaintiff's meeting with Ms. Nabors was related to an

18  Equal Opportunity investigation stemming from plaintiff's complaint regarding safety

19  violations. Dkt. 16, Decision and Order Granting Relief, at 39. Ms. Nabors conducted

20  this interview in her role as manager of Equal Opportunity and Pass Protection based

21  out of Atlanta, Georgia. *Id.* at 21. Accordingly, the record indicates that the meeting

22  between Ms. Nabors and plaintiff was incidental to an investigation based out of Atlanta

23

24

25

1  Georgia. Ms. Nabors' incidental conduct in Washington is insufficient to establish

2  personal jurisdiction over defendant.

3      Based on the foregoing, taking all uncontroverted allegations in plaintiff's

4  complaints and affidavits as true, plaintiff has failed to make a prima facie showing of

5  personal jurisdiction over defendant in this action. Plaintiff has failed to meet her burden

6  of showing that defendant directed activities at Washington and that the claims in this

7  action arise out of forum-related activities. The Court should dismiss this action without

8  prejudice for lack of personal jurisdiction over defendant.

9      In addition to lack of personal jurisdiction, defendant argues that the Court should

10  dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) because the

11  complaint fails to state a claim for which relief may be granted and because plaintiff's

12  complaint is time barred. However, because the Court should find that it lacks personal

13  jurisdiction over defendant, the Court need not reach the merits of defendant's

14  remaining arguments.

15                    <u>CONCLUSION</u>

16      Based on the foregoing, the Court should DENY defendant's motion to strike.

17  Dkt. 17. The Court should GRANT defendant's motion to dismiss (Dkt. 13) and

18  DISMISS plaintiff's complaint without prejudice because the Court lacks personal

19  jurisdiction over the defendant in this action.

20      The parties have fourteen (14) days from service of this Report and

21  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

22  FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

23  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the

24

25

parties shall have fourteen (14) days from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on April 29, 2022, as noted in the caption.

Dated this 11th day of April, 2022.

Theresa L. Fricke
United States Magistrate Judge